IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION



FILED IN CLERK'S OFFICE
U.S.D.C -Atlanta

JUL 6 – 2006

LUTHER D. THOMAS, Clerk
By: _____
Deputy Clerk

| | |
|---|---|
| SOUTHERN ENTERTAINMENT TELEVISION, INC., | CIVIL ACTION FILE |
| Plaintiff, | NUMBER |
| vs. | **1 06 CV 1593** |
| COMCAST CORPORATION, | |
| Defendant | TCB |

**COMPLAINT**
**JURY TRIAL DEMANDED**

Comes now Southern Entertainment Television, Inc., and for its complaint against defendant shows:

**PARTIES**

1.

Southern Entertainment Television, Inc., is a Georgia corporation with its principal office at 3353 Peachtree Road, NE #1040, Atlanta, Georgia 30326. It is resident in Georgia.

2.

Southern Entertainment Television, Inc., is an innovative music video marketer and television programming service with a focus on Southern Gospel, Bluegrass, and classic Black Gospel. Southern Entertainment Television, Inc., owns a content library with rights to more than 20,000 hours of television programming.

3.

Comcast Corporation is a Pennsylvania corporation with its principal place of business in Philadelphia, Pennsylvania. Its registered agent in Georgia is C T Corporation System, 1201 Peachtree Street, N.E., Atlanta, Georgia 30361. Comcast creates, develops, manages, and operates broadband cable systems throughout the country, including systems in Georgia, and provides programming content.

4.

Comcast Corporation content businesses include majority ownership of Comcast Spectacor, Comcast SportsNet, E! Entertainment Television, Style, The Golf Channel, Outdoor Life Network, and G4. Comcast Corporation has an ownership position in TV One over which it has management control. TV One attempts to offer programming that competes with the offerings of Southern Entertainment Television, Inc.

5.

Plaintiff's claims have a value in excess of $75,000.

## JURISDICTION

6.

This Court has jurisdiction over these proceedings under the Clayton Act which authorizes an aggrieved party to bring any action for damages for violations of sections 1 and 2 of the Sherman Act and section 7 of the Clayton Act in any district court of the United States in a district where a defendant resides, is found or has an agent. 15 U.S.C. § 15(a).

7.

Comcast Corporation employs C T Corporation System, 1201 Peachtree Street, N.E., Atlanta, Georgia 30361 as its registered agent in the Northern District of Georgia.

8.

This Court has jurisdiction over these proceedings under the Clayton Act which authorizes an aggrieved party to bring any action for injunctive relief in any district court of the United States having jurisdiction over the parties. 15 U.S.C. § 26.

9.

This Court has subject matter jurisdiction over this proceeding because 28 U.S.C. § 1331 confers upon the district courts original jurisdiction over all actions arising under the Constitution and laws of the United States.

10.

This court has subject matter jurisdiction over this proceeding because 28 U.S.C. § 1332 confers upon the district courts jurisdiction where the parties are citizens of different states and the amount in controversy exceeds $75,000.

## AFFILIATION AGREEMENT

11.

Satellite Services, Inc., and SGM Television, Inc., entered into an affiliation agreement ("Agreement") on August 8, 1997, in which SGM Television granted to defendant's predecessor in interest the right to distribute its programming on its cable, wire, or fiber optic transmission systems and other such systems that may be developed in the future.

12.

The term of the Agreement is fifteen years. It has not been terminated in any manner contemplated by the Agreement.

13.

Southern Entertainment Television, Inc., is the successor in interest to the affiliation agreement between SGM Television, Inc., and Satellite Services, Inc., dated August 8, 1997. SGM Television assigned the affiliation agreement to Southern Entertainment Television, Inc., a Delaware corporation. Subsequently, Southern Entertainment Television assigned the affiliation agreement to plaintiff. All of the assignations were pursuant to merger, acquisition, or consolidation. In the affiliation agreement this party is called "Network."

14.

Comcast Corporation is the successor in interest to the affiliation agreement between SGM Television, Inc., and Satellite Services, Inc., dated August 8, 1997. Satellite Services, Inc., transferred the agreement to TCI, which in turn was acquired by AT&T,

which later transferred ownership to Comcast Corporation. All of the assignations were pursuant to "merger, acquisition, or consolidation. In the affiliation agreement this party is called "Affiliate."

15.

Under the terms of the agreement, plaintiff "grants to Affiliate (now Comcast) ... the non-exclusive right, but not the obligation, to exhibit, distribute, and authorize the reception" of its programming.

16.

Although the agreement does not obligate (Comcast) to provide its programming should it so choose, it has an obligation to deal in good faith with the Network.

17.

The agreement further specified, "Affiliate shall have the right, upon written notice to Network within thirty (30) days thereof, to elect to include under this Agreement, and to demand authorization from Network, if necessary, and to launch the Service on, any Cable System or other video distribution system or enterprise by which or to which Affiliate is authorized to exhibit, distribute, subdistribute, and/or authorize the reception of the Service...."

18.

Comcast's predecessor issued a launch notice under the Agreement but Comcast Corporation failed to fulfill further obligations pursuant to the launch notice. Plaintiff repeatedly demanded the right to distribute its programs. Defendant repeatedly refused.

19.

Comcast is required under the Agreement to pay a Fee or Renewal Fee for each subscriber. Comcast has never made any payments. Comcast is obligated under the Agreement to pay plaintiff at least $149,400,000.

**Antitrust Violations**

20.
Sections 4 and 16 of the Clayton Antitrust Act, 15 U.S.C. §§ 15, 26, authorize damages and injunctive relief for violations of the Sherman Antitrust Act, 15 U.S.C. § 1 et seq., and section 7 of the Clayton Antitrust Act. 15 U.S.C. § 18.

21.
Comcast Corporation unlawfully monopolized and attempted to monopolize or in other ways unreasonably restrain trade in the cable television market. Specifically, Comcast Corporation used its size and power to refuse to deal with plaintiff in order to promote programming that it owns and operates.

22.
Comcast repeatedly refused to carry Southern Entertainment Television, Inc., programming claiming "channel capacity on our systems is extremely tight and, as far as I know, no Comcast systems have requested to carry your channels."

23.
Even while claiming that channel capacity limitations prevented Comcast from carrying the programs contemplated by the August 8, 1997 agreement Comcast launched various new offerings around the country. Comcast Corporation held investment, ownership and management interests in the companies producing the programming. For example, in December 2004 Comcast announced launch agreements for TV One programming on its systems in Indianapolis, IN, Muncie, IN, and Augusta, GA.

24.
Comcast Corporation invested as much as $70 million in TV One at the same time that it had an agreement with Southern Entertainment Television, Inc., authorizing the plaintiff to market its offerings to Comcast's systems.

25.
Comcast systems requested channels programmed by Southern Entertainment Television. Comcast would not authorize them to take the channels.

26.

Comcast used, and continues to use, its immense size to prevent independent program providers like plaintiff from access to its systems so that it may preferentially promote programming in which it has an ownership position.

27.

114 independent programmers sought national carriage on cable systems between January 1, 2003 and May 15, 2005. During that time Comcast launched only one.

28.

Plaintiff lost profits that it would have earned in a free marketplace but for the actions of Comcast Corporation.

29.

Plaintiff suffers immediate and irreparable harm that cannot be compensated by monetary damages in that it will lose the ability to deliver its programming into homes and businesses served by Comcast. The entire business of Southern Entertainment Television may be irrevocably destroyed.

### Jury Trial Demanded

30.

Plaintiff demands a trial by jury on all issues.

WHEREFORE, Plaintiff asks:

1. For a finding that defendant violated and continues to violate the terms of the affiliation agreement;
2. For a finding that defendant violated and continues to violate the antitrust laws of the United States by using its monopoly power to unreasonably restrict trade;
3. That damages be awarded for violation of the Affiliation Agreement in an amount consistent with the terms of the Affiliation Agreement, thought to be approximately $149,400,000;
4. That monetary damages be awarded for violations of antitrust laws;

5. That monetary damages be trebled pursuant to section 4 of the Clayton Act, 15 U.S.C. § 15;
6. That an injunction issue to prevent defendant from continuing its activities as to the plaintiff;
7. That all costs be cast upon the defendant;
8. That defendant be ordered to pay plaintiff's attorney's fees; and
9. That any and all other relief necessary to effect justice be ordered.

Respectfully submitted,

*/s/ Michael Jablonski*

MICHAEL JABLONSKI
Georgia State Bar No. 385850

260 Brighton Road, N.E.
Atlanta, Georgia 30309
404.290.2977
**michael.jablonski@comcast.net**